**STATE of Missouri, Plaintiff-Respondent,**

v.

**Willie CRATE, Defendant-Appellant.**

**No. 34890.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

March 20, 1973.

W. D. Shavers, St. Louis, George G. Hubel, Michael W. Reap, Robert C. Ba-

**2**

bione, Public Defender Bureau, Dept. of Welfare, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., Julian Cosentino, St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal from a judgment of conviction entered by the Circuit Court of the City of St. Louis on a jury verdict finding defendant Willie Crate guilty of murder in the second degree. § 559.020.[1] Pursuant to § 556.280, the Second Offender Act, the court sentenced the defendant to the custody of the Department of Corrections for 20 years. Defendant appealed. He contended that the court did not have jurisdiction to assess punishment; therefore, that issue should have been submitted to the jury. We agree and reverse.

Defendant, on March 27, 1971, attended a birthday party for Mahlon Moore at 2925 Thomas Street in the City of St. Louis. At the party was Mr. Moore's daughter, Leona, who had formerly lived with defendant. But at the time of the party, Leona lived with Tommie Lewis, who also was present with his friend Walter Williams, the victim. When the party broke at 2:00 A.M., defendant, not finding his coat, threatened to take Leona's coat which he had previously bought for her. Insisting that he had bought the coat for Leona, Lewis said no one was going to take the coat, and a fight ensued between Lewis and the defendant. Williams intervened, and with Lewis' help they pushed defendant back onto a bed. As defendant struggled with the two of them, he claimed that he saw the victim trying to get a pistol from his pockets. Defendant grabbed a pistol from the waistband of Mr. Moore and pushed the gun into Lewis' stomach. Both Lewis and Williams thereafter retreated toward the front door. As Wil-

liams retreated, according to defendant, Williams tripped and as he fell his hand came up pointing at defendant. The state's evidence was that at no time did Williams have a weapon, and that Lewis and Williams were trying to open the front door at the time defendant fired. Likewise, Mr. Moore denied having a gun in his waistband or on his person at the time of the fracas. Other evidence will be given as needed.

■. The state concedes that there was no pleadable or provable prior conviction; therefore, the court erred by not submitting the issue of punishment to the jury. The alleged prior conviction occurred on 15 September 1970, the record showed that defendant plead guilty to the charge of carrying a concealed weapon; that the court suspended the imposition of sentence until 19 March 1971, and granted probation until that time. On 19 March 1971 probation was extended to 19 March 1972. On 7 April 1971 a minute entry of the court's record showed that the court revoked probation and placed the defendant in the custody of the sheriff to be sentenced. Defendant never was formally sentenced. The state used the above weapon charge as the prior conviction as the authority for the court to assess punishment. Nothing in the record shows that the court made the required findings of fact to support the claim that defendant had been previously convicted. In State v. Gordon, 344 S.W.2d 69 (Mo.1961), our Supreme Court said

" . . . The record plainly states that 'imposition of sentence . . . hereby is suspended.' A *suspended sentence* is 'a *suspension* of active proceedings in a criminal prosecution. It is *not a final judgment* . . .' 24 C.J.S. Criminal Law § 1571, p. 47. The phrase 'suspended sentence' is not a 'sentence' at all *but* is used to describe the *act of withholding the 'sentence'* in a case. A 'suspended sentence' is not a 'sentence' within the meaning of that word as used in amend-

---

1. All statutory references are to RSMo., V.A.M.S. (1969).

ed Section 556.280 . . . " (Emphasis added.)

The court said that § 556.280 was a penal statute to be strictly construed and was not to be extended in its application to cases which do not by the strictest construction come under its provisions. Accordingly, on the authority of the *Gordon case,* we find that there was no prior conviction; therefore, the court erred in ousting the jury of its right to determine both guilt and punishment. See also State v. Frey, 459 S.W.2d 359 (Mo.1970), where the court said a plea of guilty is not a conviction until a judgment has been entered. 21 Am.Jur.2d, Criminal Law, § 618, p. 568.

Although the state confessed error as to the improper use of the purported prior conviction, it now urges that the case be remanded for further proceedings to determine if the Second Offender Act was appropriately applied. To support this argument the state refers us to State v. Blackwell, 459 S.W.2d 268 (Mo.Banc.1970). In the Blackwell case the question was the insufficiency of the evidence to establish the prior conviction; but in our case the question is whether there is a conviction at all.

█ Moreover, during the course of the trial this alleged prior conviction of a weapon was used to discredit the defendant's testimony. And in State v. Frey, supra, our Supreme Court said:

" . . . We hold that it is impermissible in Missouri to impeach the credibility of a witness . . . unless sentence is imposed or pronounced in the prior proceeding . . . ".

Here, impeachment by the use of an alleged prior conviction of a weapon charge in a death case where a weapon was used was so highly prejudicial and inflammatory that we hold it can be cured only by granting a new trial. This for the reason that to permit impeachment by a prior gun charge in a death case undermines completely the jury's fact finding process.

Consequently, this point is resolved in defendant's favor.

Defendant charges that the court erred by permitting the state, on cross-examination, to infringe his right against self-incrimination by showing that he made no statement to police officers after his arrest. Inasmuch as this situation could reoccur we shall consider the claim. He relies upon State v. Elmore, 467 S.W.2d 915 (Mo.1971). The Elmore case involved a prosecutor's questions to a defendant as to why he did not volunteer a statement concerning his claim of self-defense during his pre-trial stay in jail. The court held that such action was not a legitimate subject for cross-examination, but concluded that under the circumstances the killing was either a gross one with no justification or one done in self-defense, and that the objectionable questioning was not plain error.

█ In our case the defendant took the stand and testified to facts, which if believed, established his right of self-defense. On cross-examination the state inquired as to whether or not he had ever told the police the same story. In answer to this inquiry on two occasions defendant said that he never made any statement to the police. No objection was made by defendant to either the questions asked or to the answer given. Neither did defendant raise this issue in his motion for a new trial. So understandably he now seeks relief under our plain error Rule 27.20(c), V.A.M.R. Defendant when arrested was under no duty to speak or explain or deny any incriminating facts. Nor is the state allowed by inference to gain any advantage from the silence of the accused. State v. Stuart, 456 S.W.2d 19 (Mo.1970). While it is true that defendant neither objected nor raised the matter in his motion for a new trial, and that such matter may be considered under our "plain error" rule, we refrain from so doing because no manifest injustice or prejudice was shown.

**4**

Inasmuch as the other claims of error may not arise on retrial, we do not decide them.

Judgment reversed and remanded for a new trial in accordance with the views expressed herein.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.

1. All statutory references are to RSMo. 1969, unless otherwise stated.