**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Don Allen PARKER,**
**Defendant-Appellant.**

**No. 78–1002.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 25, 1979.

Decided Aug. 30, 1979.

I. H. Kaiser, Denver, Colo., for defendant-appellant.

John E. Green, First Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Don Allen Parker appeals from a jury verdict finding him guilty of assaulting a federal officer while in the performance of his duties, in violation of 18 U.S.C. §§ 111 and 1114, and of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. App. § 1202(a)(1).

On appeal Parker raises three issues: (1) whether certain evidence was improperly excluded by the trial court; (2) whether jury instructions relating to the agents and the scope of their official employment were deficient; and (3) whether the defendant had been previously "convicted" as required by 18 U.S.C. App. § 1202(a)(1).

Substantial evidence was adduced at trial to show that on August 28, 1977, in the early hours of the morning, defendant initiated a fight with agent Jerry W. Tate of the Bureau of Alcohol, Tobacco and Firearms, in a local club near Lawton, Oklahoma. Tate and his fellow agent, Robert H. Valadez, Jr., were allegedly working under cover making contacts in the Lawton/Fort Sill, Oklahoma, area in order to discover firearms violations. Evidence showed that during the course of the fight defendant fired a revolver, two bullets striking Tate, and one striking Valadez. The jury found defendant guilty of assaulting Tate but not of assaulting Valadez.

Concerning the weapons possession charge, which requires proof of a prior felony conviction, the prosecution presented evidence that defendant had previously been indicted in an Oklahoma county court on a charge of assault and battery with a deadly weapon, had pleaded guilty, and was on probation in accordance with the Oklahoma Deferred Judgment Act, Okl.Stat.Ann. tit. 22, § 991c (West Supp.1973).[1] The trial court ruled that the deferred judgment and sentence was a final conviction for purposes of 18 U.S.C. App. § 1202(a)(1). Defendant was found guilty on this count.

I

We first treat the weapons possession conviction. Defendant argues that the proceedings in the Oklahoma court did not constitute a "conviction" as required by 18 U.S.C. App. § 1202(a)(1). In view of our recent decision in *United States v. Stober*, No. 77–1854 (10th Cir. Aug. 3, 1970) (opinion on rehearing en banc), we agree.

Section 1202(a)(1) makes it a crime for any person who "has been convicted by a court . . . of a felony" to receive, possess, or transport a firearm. Thus, a prior felony conviction is an element of a crime charged under this statute. In *Stober* the statute involved was 18 U.S.C. § 922(h), which prohibits "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from

---

1. The statute provides in pertinent part,

 Upon a verdict or plea of guilty, but before a judgment of guilt, the court may, without entering a judgment of guilt, and with the consent of the defendant, defer further proceedings and place the defendant on probation . . . . Upon completion of the probation term . . . the defendant shall be discharged without a court judgment of guilt, and the verdict or plea of guilty shall be expunged from the record and said charge shall be dismissed with prejudice to any further action. . . .

receiving firearms. We held there that the state's determination whether proceedings in its courts constitute a "conviction" is to be followed by the federal courts. The *Stober* Court had before it the same Oklahoma statute at issue in the present case and found it to be a deferred judgment act, not a deferred sentence statute. Thus, an individual serving a probationary period under this act is not "convicted" within the intended scope of section 922(h).

Sections 1202(a)(1) and 922(h) were enacted under separate titles of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L.No.90–351, 82 Stat. 197, *as amended by* the Gun Control Act of 1968, Pub.L.No. 90–618, 82 Stat. 1213. Although these sections differ on the groups of people reached and the punishable classes of behavior,[2] the statutes are identical insofar as each embraces conduct of convicted criminals. See *United States v. Bass,* 404 U.S. 336, 342–43, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). In view of the literal language of these statutes and our reasoning in *Stober,* we conclude the same rule on whether there has been a conviction applies to both statutes. Thus, defendant was improperly convicted on the weapons possession count.

## II

 Because evidence of the prior conviction was heard by the jury, the guilty verdict on the assault charge must also be reversed. No independent ground supports the admissibility of the evidence of the Oklahoma proceedings against defendant. See Fed.R.Evid. 404(b), 609. Improper admission of evidence of a prior crime or conviction, even in the face of other evidence amply supporting the verdict, constitutes plain error impinging upon the fundamental fairness of the trial itself. *United States v. Burkhart,* 458 F.2d 201 (10th Cir.

1972); *United States v. Gilliland,* 586 F.2d 1384 (10th Cir. 1978).

## III

 Because there must be a retrial on the assault charge, and because the other issues raised by defendant in this appeal will be germane to that trial, we treat those issues. Defendant argues the trial court improperly excluded evidence relevant to whether the federal officers were acting in the course of duty at the time of the assault. The record is unclear, but apparently the excluded evidence would have tended to show that the officers, in apprehending two material witnesses within a short time after the assault, drunkenly abused those witnesses once they were handcuffed. The United States argues that the trial judge, in the exercise of his discretion, properly excluded the evidence because of its inflammatory nature and tendency to mislead the jury. See Fed.R.Evid. 403. Balancing the probative value of such evidence against the danger it would prejudice and mislead the jury is entrusted to the discretion of the trial judge. See *Rigby v. Beech Aircraft Co.,* 548 F.2d 288, 293 (10th Cir. 1977). We see no abuse of that discretion in the instant record.

## IV

Finally, it is argued the trial judge erred by not instructing the jury on the standard for determining whether the agents were acting within the scope of their official employment. Defendant contends the jury instruction should have been "whether the agent is acting within the scope of what he is employed to do, or is engaging in a personal frolic of his own." The trial judge had merely instructed the jury that the assault count required the agent to be "engaged in the performance of his official duties."

2. Section 922(h) prohibits the receipt of firearms by persons "under indictment for, or who [have] been convicted . . . of, a crime punishable by imprisonment for a term exceeding one year;" fugitives from justice; users or addicts of various drugs; or persons adjudicated as "mental defective[s]" or committed to a mental institution.

Section 1202(a) prohibits receipt, possession or transportation of firearms by convicted felons; dishonorably discharged servicemen; persons adjudicated as mental incompetents; former U. S. citizens who renounced their citizenship; and aliens illegally in the country.

The evidence concerning the agents' official status at the time of the assault was hotly disputed. Both agents and their supervisor testified they were on duty. But there was evidence tending to prove the following: the assault arose out of a fight over a one dollar bet on a pool game at 3:30 a. m.; both agents had been drinking heavily and appeared to be drunk; one agent grossly misused and broke a pinball machine; and one agent, immediately before the fight, was embracing a woman. Also in evidence was a Bureau order describing conduct undercover agents should avoid, including "excessive drinking, immoral participation, violence, and flagrant exhibitionism." [3]

■ In the context of this case, in which the only real dispute would seem to be whether the agents were on duty when the fight occurred, we think a more specific instruction would be both proper and desirable. *See United States v. Reid,* 517 F.2d 953 (2d Cir. 1975); *United States v. Frizzi,* 491 F.2d 1231 (1st Cir. 1974); *United States v. Michalek,* 464 F.2d 442 (8th Cir. 1972); *United States v. Heliczer,* 373 F.2d 241 (2d Cir.), *cert. denied,* 388 U.S. 917 (1967). *Cf. United States v. Linn,* 438 F.2d 456, 458 (10th Cir. 1971) ("[o]ne of the elements of the offense proscribed by § 111 is that the federal officer assaulted be engaged in the performance of his official duties and not on a frolic of his own.").

Here the defendant neither offered an instruction to the court nor complained at the time about the instruction given. Whether the omission under these circumstances was plain error is an issue we do not decide since the case is to be retried.

The judgment is reversed and the case is remanded with direction to dismiss the weapons possession charge and for further proceedings consistent herewith.

---

3. The Bureau order, in evidence, reads in full,

The undercover special agent must not commit any acts which would give rise to doubt in a juror's mind at the time of trial concerning the agent's veracity or moral and ethical character. Acts of excessive drinking, immoral participation, violence, and flagrant exhibitionism all make the average citizen believe the officer has exceeded his authority and is not of moral character to be believed under oath. Activities of this type will not be permitted under any circumstances. Special agents who violate this policy will be subject to disciplinary action, including possible removal from the Bureau.

Evidence showed that neither agent had been disciplined for the alleged misconduct discussed in text.